**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| DARREN WEBB, | ) | NO. CV 12-4793-E |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | ) | **AND ORDER OF REMAND** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Pursuant to sentence four of 42 U.S.C. section 405(g), IT IS HEREBY ORDERED that Plaintiff's and Defendant's motions for summary judgment are denied and this matter is remanded for further administrative action consistent with this Opinion.

**PROCEEDINGS**

Plaintiff filed a complaint on June 6, 2012, seeking review of the Commissioner's denial of disability benefits. The parties filed a consent to proceed before a United States Magistrate Judge on July 16,

2012.  Plaintiff filed a motion for summary judgment on November 6, 2012.  Defendant filed a cross-motion for summary judgment on December 4, 2012.  The Court has taken the motions under submission without oral argument.  See L.R. 7-15; "Order," filed June 7, 2012.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

Anticipating his release from prison, Plaintiff applied for Supplemental Security Income ("SSI") on November 26, 2008 (Administrative Record ("A.R.") 182-87, 216-17, 222).  Plaintiff asserts disability since January 1, 2004, based on alleged schizophrenia and severe depression (id.).

An Administrative Law Judge ("ALJ") determined that Plaintiff suffers from severe "schizoaffective disorder vs. bipolar disorder," with a history of seizure disorders, but that these disorders do not meet or equal a listed impairment (A.R. 12-13, 16 (adopting in part State Agency review physician opinion at A.R. 397-410, and in part the diagnoses at A.R. 286, 289-90, 298, 303, 320, 323, 338, 342, 355-61, 363, 379, 385, 389, 454, 461, 480, 486-87, 496, 508, 624, 636, 674)). The ALJ found that Plaintiff retains the residual functional capacity to perform medium work limited to: (1) work that does not require climbing ladders, ropes or scaffolds, or any exposure to hazardous machinery, unprotected heights, or other high risk, hazardous or unsafe conditions (seizure precautions) (A.R. 13 (adopting State agency review physician's physical residual functional capacity assessment at A.R. 411-18)); and (2) "simple, routine, and repetitive tasks performed in a low stress work environment, which is defined as

work that does not require changes in work setting or any unusual, very fast pace or production rate requirements," requiring "no more than occasional interaction with the public and co-workers" (A.R. 13).[1] The ALJ found that, with this capacity, Plaintiff could perform jobs as a hand packager, house worker, or night cleaner (industrial), and therefore is not disabled (A.R. 12, 16, 20 (adopting vocational expert testimony at A.R. 67-68)).

Plaintiff sought review from the Appeals Council, submitting a legal brief, a letter from Plaintiff's drug and alcohol counselor, and some additional medical records (A.R. 5; see also A.R. 276-83 (legal brief), 682-698 (letter and additional medical records)). The Appeals Council considered these additional materials, but denied review (A.R. 1-5).

**STANDARD OF REVIEW**

Under 42 U.S.C. section 405(g), this Court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used proper legal standards. See Carmickle v. Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and quotations omitted); Widmark v. Barnhart, 454

---

[1] As discussed below, it is unclear how the ALJ arrived at these non-exertional limitations.

3

F.3d 1063, 1067 (9th Cir. 2006).

Where, as here, the Appeals Council considered additional material but denied review, the additional material becomes part of the Administrative Record for purposes of the Court's analysis. See Brewes v. Commissioner, 682 F.3d 1157, 1163 (9th Cir. 2012) ("[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence."; expressly adopting Ramirez v. Shalala, 8 F.3d 1449, 1452 (9th Cir. 1993)); Taylor v. Commissioner, 659 F.3d 1228, 1232 (2011) (courts may consider evidence presented for the first time to the Appeals Council "to determine whether, in light of the record as a whole, the ALJ's decision was supported by substantial evidence and was free of legal error"); Penny v. Sullivan, 2 F.3d 953, 957 n.7 (9th Cir. 1993) ("the Appeals Council considered this information and it became part of the record we are required to review as a whole"); see generally 20 C.F.R. §§ 404.970(b), 416.1470(b).

**DISCUSSION**

After reviewing the entire record, including the additional evidence provided for the first time to the Appeals Council, the Court has concluded that the Administration's decision is not supported by substantial evidence. Remand is appropriate under sentence four of 42 U.S.C. section 405(g).

///

**A.   The Record Before the ALJ**

Plaintiff reported a long history of mental health problems, including suicide attempts when Plaintiff was seven and eleven years old, as well as addiction. See A.R. 259-60, 284, 437, 440, 651 (detailing same). Plaintiff has been incarcerated at least six times, with his first arrest at age 22 (A.R. 298, 437, 636, 651, 672).

Consultative psychiatrist, Dr. Ernest A. Bagner III, examined Plaintiff and prepared a Complete Psychiatric Evaluation dated March 6, 2009 (A.R. 392-95). Dr. Bagner reviewed a psychiatric note from Dr. Fisher dated July 13, 2007, but no other medical records (A.R. 393; see also A.R. 297-99, 307 (available records from Dr. Fisher for this date)).[2] Plaintiff reported to Dr. Bagner that he suffers from schizophrenia and depressive disorders, and has difficulty dealing with people, mood swings, depression, nervousness, feelings of helplessness and hopelessness, low motivation, auditory

---

[2]   Dr. Fisher, a psychologist, diagnosed Plaintiff with "Bipolar II - Depressed," other substance abuse, alcohol abuse, and a seizure disorder, and assigned Plaintiff a GAF score of 57 (A.R. 298-99). Clinicians use the GAF scale to report an individual's overall psychological functioning. The scale does not evaluate impairments caused by physical or environmental factors. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV-TR") 34 (4th Ed. 2000 (Text Revision)). A GAF score of 51-60 indicates "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks), or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." Id.

Plaintiff was incarcerated at the time (A.R. 299). Dr. Fisher did not offer any further opinion concerning Plaintiff's functional limitations.

and visual hallucinations, and sleep disturbance (A.R. 392-93). Plaintiff also reported a history of suicidal ideations, one psychiatric hospitalization, and alcohol dependency with his last use in November 2006 (id.). Plaintiff was taking Seroquel and Prozac (A.R. 393).

Dr. Bagner diagnosed Plaintiff with a mood disorder, not otherwise specified, and alcohol abuse in remission, and indicated a need to rule out anti-social personality disorder (A.R. 394). Consistent with Dr. Fisher's evaluation, Dr. Bagner assigned Plaintiff a GAF of 60 and stated that Plaintiff has had "minimal improvement" with psychiatric medications (A.R. 394). Dr. Bagner opined:

> The patient would have zero to mild limitations interacting with supervisors, peers and the public. He reports zero to mild limitations maintaining concentration and attention and completing simple tasks. He would have mild to moderate limitations handling normal stresses at work and completing complex tasks. <u>He would have moderate limitations completing a normal workweek without interruption.</u>

(A.R. 395 (emphasis added)).

State agency physician Dr. K. Gregg completed a Psychiatric Review Technique form and case analysis for Plaintiff dated March 17, 2009 (A.R. 397-410). Dr. Gregg reviewed Dr. Bagner's assessments and a summary of Plaintiff's available medical records. See A.R. 408-10
///

(case analysis summarizing same).³ Dr. Gregg opined that Plaintiff's impairments are "not severe," and that the evidence does not satisfy the diagnostic criteria for affective disorders (A.R. 397, 400, 406). Dr. Gregg believed that Plaintiff would have only mild difficulties in maintaining social functioning and maintaining concentration, persistence, or pace (A.R. 405). Dr. Gregg indicated that Plaintiff would have no limitations in activities of daily living and no

---

³ Available medical records were somewhat scattered. See A.R. 284-389 (records). Treatment notes show that Plaintiff reported auditory hallucinations and paranoia in December 2003 (A.R. 286, 296, 337), January 2004 (A.R. 319, 323-24), February 2004 (A.R. 334), June 2005 (A.R. 311, 329-30, 362), August 2005 (A.R. 359, 363), November 2005 (A.R. 356-57), January 2006 (A.R. 354-55), March 2007 (A.R. 303, 309, 350, 352, 388-89), May 2007 (A.R. 348-49; but see A.R. 346 (treatment note from May 2007 indicating Plaintiff denied hallucinations)), June 2007 (A.R. 345), July 2007 (A.R. 298, 385), September 2007 (A.R. 343), October 2007 (A.R. 341-42), November 2007 (A.R. 340), December 2007 (A.R. 339, 380), January 2008 (A.R. 378), February 2008 (A.R. 383), March 2008 (A.R. 377; but see A.R. 496 (later submitted March 2008 note indicating Plaintiff reported no symptoms and was stable and wanted to get off his psychiatric medications)), June 2008 (A.R. 375), August 2008 (A.R. 374), September 2008 (A.R. 373; but see A.R. 474 (later submitted September 2008 note indicating Plaintiff was "completely asymptomatic" and reapplying for SSI)), October 2008 (A.R. 371), and December 2008 (A.R. 367). Treatment notes from 2004 also show that Plaintiff complained of auditory hallucinations, and Plaintiff claimed he wanted psychiatric medication to help him sleep so his time in incarceration would go by faster. See A.R. 313-18 (notes). Plaintiff reportedly denied having auditory hallucinations in April 2007 (A.R. 347). Treatment notes from July and August 2007 report that Plaintiff had no psychotic symptoms on his current medications (A.R. 344).

The most recent available medical record for Plaintiff at the time of the State agency physician review was a December 16, 2008 treatment note reporting that Plaintiff was soon to be released from custody, and diagnosing Plaintiff with "bipolar I D/O [disorder], depressed [with] pf [psychotic features]" (A.R. 367). Plaintiff then complained of auditory hallucinations and depression related to being away from his family (A.R. 367).

7


repeated episodes of decompensation of extended duration (A.R. 405). Dr. Gregg stated that Plaintiff had "credible mood problems, but mild" (A.R. 407).

State agency physician Dr. K. Wahl prepared a Physical Residual Functional Capacity Assessment form for Plaintiff dated March 29, 2009 (A.R. 411-18). Dr. Wahl stated that Plaintiff has a "history of seizure" that is "now controlled" (A.R. 411). Dr. Wahl opined that Plaintiff should avoid even moderate exposure to hazards and advised that Plaintiff should have seizure precautions (<u>i.e.</u>, no unprotected heights, open bodies of water, open electrical circuits, driving or heavy equipment) (A.R. 414). Dr. Wahl found no other limitations (A.R. 412-14; <u>see also</u> A.R. 417-18).

After the above-summarized medical evaluations and prior to the ALJ's adverse decision, Plaintiff's counsel submitted numerous additional medical records to the ALJ. <u>See</u> A.R. 16-19 (ALJ summarizing record); <u>see also</u> A.R. 431-674 (additional records covering the time period from January 2004 through December 2010). Like the previously submitted records, these records reflect that Plaintiff has complained of auditory hallucinations. <u>See, e.g.</u>, A.R. 436, 438, 454, 461, 470, 478, 489, 500, 507, 573, 575-76, 578, 580, 585, 595, 597-98, 616, 619, 621-22, 624-25, 626, 634, 636, 645, 647, 651, 652, 657, 663, 666, 670 (noting complaints). Plaintiff claimed that he has heard "bad voices" every day since he was 14 years old (A.R. 670).

///
///

1    In September 2004, Plaintiff reported that his auditory
2 hallucinations made it difficult for him to hold a job due to
3 concentration issues.  See A.R. 436 (September 2004 record).  An
4 August 2004 psychological assessment prepared by Plaintiff's treating
5 psychologist stated that due to Plaintiff's hallucinations and
6 paranoia that had not been stabilized with medication, Plaintiff would
7 not be able to cope effectively with the demands of work and other
8 employees, and therefore Plaintiff could not work.  See A.R. 438
9 (evaluation); see also A.R. 652 (January 2005 assessment by same
10 psychologist reaching same conclusion); but see A.R. 440 (August 2004
11 note indicating that Plaintiff reported working 12 hours)).  Plaintiff
12 then was seeking social security benefits.  See A.R. 450.

14    Plaintiff was released from incarceration sometime in or around
15 March 2006 (A.R. 644).  An April 2006 treatment note indicates that
16 Plaintiff was approved for SSI benefits (A.R. 641; see also A.R. 650
17 (January 2005 note indicating that Plaintiff had been denied SSI
18 benefits four times previously)).

20    Plaintiff later returned to custody.  A pre-release follow up
21 from November 2008, indicates that Plaintiff was expected to be
22 paroled in December 2008 and had concerns about whether he would
23 receive social security benefits, but described Plaintiff as stable
24 (A.R. 460).  A treatment plan from January 2009 prepared by a social
25 worker states that, due to Plaintiff's mental illness, he is not
26 capable of living independently or maintaining employment (A.R. 624-
27 25).  The social worker stated that SSI would "further stabilize"
28 Plaintiff and "further his access to treatment" (A.R. 625).

In May 2010, Plaintiff reported he was unable to function due to distraction from hearing voices and isolation due to his paranoia (A.R. 670). Plaintiff, however, could perform his own basic activities of daily living (A.R. 670). Plaintiff was diagnosed with schizoaffective disorder depressive type, post traumatic stress disorder, alcohol dependence in full remission, and with a need to rule out mood disorder not otherwise specified (A.R. 674). Plaintiff was assigned a GAF of 52 (A.R. 674).

### B. Additional Evidence Submitted to the Appeals Council Following the ALJ's Adverse Decision

Additional evidence submitted to the Appeals Council included a December 2010 follow up medication note indicating that Plaintiff had a history of "voices in the head," but was stable with no reported auditory hallucinations at that time (A.R. 690). Plaintiff was hospitalized in March 2011 for depression, anxiety, panic, medication "abuse," and suicidal urges (A.R. 695). Plaintiff then was off his medications (A.R. 695). Plaintiff's resumed his medications and was released three days later, stable with no reported hallucinations (A.R. 695-97). Plaintiff's treating doctor diagnosed Plaintiff with schizophrenia paranoid type and assigned a GAF of 40 at the time of his release (A.R. 695, 698).[4]

---

[4] A GAF score of 31-40 indicates "some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work. . .)." DSM-IV-TR at 34.

   C.   **Analysis**

In determining that Plaintiff retains a residual functional capacity that permits Plaintiff to work, the ALJ adopted the physical limitations and abilities assessed by State Agency review physician Dr. Wahl. See A.R. 17-18. The ALJ determined Plaintiff's specific non-exertional (mental) limitations to be limitations to simple, routine, repetitive tasks in a low stress environment, which does not require changes in work setting or any unusual or fast pace or production rate requirements, and no more than occasional interaction with the public and co-workers (see A.R. 13). In reaching this determination, the ALJ claimed to have given "significant weight" to Dr. Bagner's opinions and also claimed to have adopted "slightly more restrictive limitations" than Dr. Bagner found to exist (A.R. 18).

The ALJ did not expressly acknowledge Dr. Bagner's opinion that Plaintiff would have "moderate limitations completing a normal workweek without interruption." Compare A.R. 17 (ALJ's summary of Dr. Bagner's assessment) with A.R. 395 (Dr. Bagner's assessment). Thus, it is unclear whether the ALJ considered this portion of Dr. Bagner's opinion in determining Plaintiff's residual functional capacity. The ALJ's failure to acknowledge, and possible failure to consider, this portion of Dr. Bagner's opinion may have been material to the disability determination. The vocational expert testified that, if a person with the residual functional capacity the ALJ found to exist were to miss more than two days of work per month, it would preclude employment. See A.R. 68-69 (vocational expert testimony).
///

Furthermore, the ALJ did not have any expert opinion translating Dr. Bagner's assessment into specific non-exertional functional limitations. Dr. Bagner himself did not translate his assessment into a specific residual functional capacity. See A.R. 395 (Dr. Bagner's opinion). The State agency review physician who considered Dr. Bagner's assessment did not translate the assessment into a specific residual functional capacity. See A.R. 397-410 (State agency review assessment). There is no Mental Residual Functional Capacity Assessment form in the record. And, finally, the ALJ did not seek the services of a medical expert to translate Dr. Bagner's opinion into specific functional limitations. Thus, one is left to speculate regarding the issue of what "moderate limitations completing a normal workweek without interruption" might mean in terms of, for example, possible absenteeism.[5]

Absent expert assistance, the ALJ could not competently translate Dr. Bagner's opinions into a residual functional capacity assessment.[6] It is well-settled that an ALJ may not render his or her own medical opinion or substitute his or her own diagnosis for that of a claimant's physician. See Tackett v. Apfel, 180 F.3d 1094, 1102-03

---

[5] To the extent the ALJ intended to suggest that "moderate" limitations are never consistent with a disabling condition (A.R. 18), the suggestion must be rejected. See, e.g., Andrews v. Shalala, 53 F.3d 1035, 1044 (9th Cir. 1995) (failure to consider "moderate limitations" on the non-exertional functioning of a disability claimant required remand).

[6] Compare Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008) (ALJ could translate claimant's condition involving mental limitations into concrete residual functional capacity where there existed a basis in the medical record for doing so (i.e., supporting medical opinions)).

(9th Cir. 1999) (ALJ erred in rejecting physicians' opinions and finding greater residual functional capacity based on claimant's testimony concerning a road trip; there was no medical evidence to support the ALJ's determination); Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is forbidden from making his own medical assessment beyond that demonstrated by the record); Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) (an "ALJ cannot arbitrarily substitute his own judgment for competent medical opinion") (internal quotation marks and citation omitted); Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings").  In this case, before the ALJ determined that a particular residual functional capacity assessment would account for Plaintiff's medical conditions, the ALJ should have called on an expert to provide competent evidence with respect to such issues.

Because the circumstances of this case suggest that further administrative review could remedy the ALJ's errors,[7] remand is

---

[7] There are outstanding issues that must be resolved before a proper disability determination can be made in the present case.  For this reason, the Ninth Circuit's decision in Harman v. Apfel, 211 F.3d 1172 (9th Cir.), cert. denied, 531 U.S. 1038 (2000) ("Harman") also does not compel a reversal for the immediate payment of benefits.  In Harman, the Ninth Circuit stated that improperly rejected medical opinion evidence should be credited and an immediate award of benefits directed where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited."  Harman at 1178 (citations and quotations omitted). Assuming, arguendo, the Harman holding survives the Supreme

(continued...)

appropriate. McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011); see generally INS v. Ventura, 537 U.S. at 16 (upon reversal of an administrative determination, the proper course is remand for additional agency investigation or explanation, except in rare circumstances).

**CONCLUSION**

For all of the foregoing reasons,[8] Plaintiff's and Defendant's motions for summary judgment are denied and this matter is remanded for further administrative action consistent with this Opinion.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: February 4, 2013.

_____/S/_____
CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE

---

[7](...continued)
Court's decision in INS v. Ventura, 537 U.S. 12 (2002), the Harman holding does not direct reversal of the present case. In addition to the outstanding issues that must be resolved, it is not clear that the ALJ would be required to find Plaintiff disabled for the entire period of claimed disability if the medical opinions were fully credited.

[8] The Court has not reached any issue raised by Plaintiff except insofar as to determine that reversal with a directive for the payment of benefits would not be appropriate at this time.

14